Filed 12/11/13  P. v. Kwark CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ROYCE SUNG KWARK,<br><br>　　　　Defendant and Appellant. | B240185<br><br>(Los Angeles County<br>Super. Ct. No. KA091206) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Douglas Sortino, Judge.  Affirmed.

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and Daniel C. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Royce Sung Kwark appeals from the judgment entered upon his jury conviction of criminal threats, false imprisonment by violence, assault by force likely to cause great bodily injury, and assault with a firearm. Defendant argues the court committed reversible error in limiting his cross-examination of the prosecution's main witness. We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

The victim, Youn Kyong Oh, was a manager at the Green Spa in Baldwin Park, owned by defendant's father. At about 9:30 p.m. on June 19, 2010, Oh called Kyung Hee Kim, the owner's girlfriend, to report that a customer had reached through the office window and taken the spa ledger, which contained $500 to $530. An hour later, defendant, Kim, and two other men arrived at the spa, where Oh was waiting for them.

At trial, Oh testified that upon entering the spa, defendant pointed a gun at Oh and threatened to kill her. He dragged her into the office, some 15 feet away, where he beat her, strangled her, and ground the edge of the gun over her body while holding her on the floor with his knee. Kim and one of defendant's companions encouraged defendant. Defendant then emptied Oh's purse on the floor and removed approximately $540. Kim counted the money. She accused Oh of arranging the theft she had reported earlier that evening. Defendant dragged Oh to another area of the office, where he continued to beat and strangle her. He ground the barrel of the gun against various parts of her body and threatened to shoot her. At one point, Oh's head was covered with a towel, and she heard clicking noises.

Oh was forced to copy and sign a statement Kim wrote for her in Korean. In the statement, Oh promised not to do anything to harm the spa. She also promised to take full responsibility in any police investigation and to return to Korea. Oh wrote down her name and Social Security number on a separate piece of paper. Kim told her that defendant and his companions were members of the "Chinese Mafia," and she threatened to kill Oh if Oh did not leave for Korea within two days. Oh claimed she was let go around 2 a.m. Defendant and Kim retained Oh's driver's license.

2

Later that day, Oh tried to report the incident at the Los Angeles Police Department but left without doing so because no Baldwin Park officer arrived to take her statement. She went to a nearby clinic, where she was examined and given pain medication. On June 21, 2010, Oh reported the incident to Baldwin Park Police Department Officer John Montgomery. Officer Montgomery, who had investigated the spa for prostitution, was initially suspicious of Oh's motives because she had not cooperated in his investigation and had delayed reporting the alleged robbery and attack on her. But as the interview went on, it became obvious to him that Oh "had been through an ordeal." Officer Montgomery photographed bruises on Oh's legs, knees, arms, right hand, back, neck, and face, as well as cuts on her lip and left ear lobe. In particular, there was a foot-shaped bruise on her back and a coin-shaped bruises on her legs.

Police found a loaded black Glock handgun under a sofa in defendant's living room. Oh's driver's license was found in a dresser drawer, along with a photocopy of the statement she had been forced to write. The original of that statement and the sheet with Oh's name and Social Security number were retrieved from Kim's apartment.

Defendant and Kim were charged with second degree robbery (Pen. Code,[1] § 211, count 1); criminal threats (§ 422, count 2); false imprisonment by violence (§ 236, count 3); dissuading a witness by force or threat (§ 136.1, subd. (c)(1), count 4); torture (§ 206, count 5); and assault with a firearm (§ 245, subd. (a)(2), count 6). As to all counts, it was alleged defendant was armed with and personally used a firearm. (§§ 12022, subd. (a)(1), 12022.5, subd. (a).)

Two juries were empaneled, one for each defendant. The jury that heard co-defendant Kim's case convicted her as charged; her conviction is not the subject of this appeal.[2] The jury that heard defendant's case acquitted him of counts 1 (robbery), 4

[1] All statutory references are to the Penal Code.

[2] Kim's incriminating statements against defendant were presented only to the jury that decided Kim's case.

3

(dissuading a witness), and 5 (torture), instead convicting him of the lesser included offense of assault by force likely to cause great bodily injury. Defendant was convicted as charged of the remaining counts (2, 3, and 6), and the firearm allegations were found to be true.

Defendant was sentenced to 16 years in state prison, consisting of four years for count 6, plus 10 years for the firearm enhancement, and eight months on count 2, plus 16 months on the firearm enhancement. Defendant received concurrent sentences on counts 3 and 5.

This appeal followed.

## DISCUSSION

The case against defendant hinged on Oh's credibility.[3] The defense impeached Oh with evidence that she had a gambling problem and was in debt. There also was evidence she had falsely claimed to have been robbed and beaten twice before when she missed work to go to a casino. The jury was told that, shortly after the June 19, 2010 incident, Oh had met with a civil attorney and then had sued the Green Spa for damages. Excerpts from Oh's recorded conversation with her friend Kyong Choi were used to suggest that, whenever Officer Montgomery left the interview room, Choi coached Oh about what to say, suggesting among other things, "Just tell them Roy did it. Blame it all on Roy." Defense counsel argued the case was about greed and extortion, and focused her closing statement on attacking Oh's credibility and highlighting inconsistencies in statements she made to Officer Montgomery, at the preliminary hearing, and at trial.

Nevertheless, defendant argues the court violated his constitutional rights to confrontation and fair trial by limiting his cross-examination of Oh on two occasions and thus preventing him from fully impeaching her credibility.

---

[3] Whether the gun found in defendant's apartment matched Oh's description of the gun used in the attack on her was disputed. At trial, defendant denied bringing his gun along, threatening or beating Oh, or taking money from her purse. Two construction workers testified they arrived at the spa between 10:00 p.m. and 10:45 p.m. to complete a remodeling job and saw everyone leave, including Oh, who had no visible injuries.

4

A trial court violates a defendant's right to confront a witness if the defendant is prohibited "'from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby, "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."' [Citations.] However, not every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance. [Citations.] . . . Thus, unless the defendant can show that the prohibited cross-examination would have produced 'a significantly different impression of [the witness'] credibility' [citation], the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment. [Citation.]" (*People v. Frye* (1998) 18 Cal.4th 894, 946, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Defendant argues the court precluded his trial counsel from cross-examining Oh with regard to a $100,000 fee Oh was to receive for opening and running a Green Spa facility in Temecula two or three years earlier. Because Oh could not obtain a license for the facility, defendant assumes she did not receive the $100,000 fee. The record does not support this assumption.

Oh testified the Temecula facility opened, but its license could not be renewed. The prosecutor objected when defense counsel asked Oh why the license renewal fell through. During the subsequent in-chambers discussion, defense counsel represented Oh "got" a $100,000 broker fee when defendant's father bought the Temecula facility, but could not obtain a license due to her conviction for unlicensed massage, and her work days were reduced from three to two. The court asked if Oh had been paid the fee, and counsel repeated that she "got it somehow" in the transaction "when she got him to buy the spa." The court reasoned that while the reduction of her work days might show Oh had a reason to be biased against defendant's family, "I don't think paying her the money is relevant to anything."

5

The record indicates that defendant's trial counsel was interested in cross-examining Oh about her work as a prostitute and her conviction for unlicensed massage, not about the $100,000 fee. On counsel's representation that Oh had received that fee, the court correctly ruled the fee was irrelevant. Defendant's claim that the ruling was incorrect because Oh did not receive the fee is contrary to his trial counsel's representation and not otherwise supported by the record.

Defendant also argues he should have been allowed to question Oh about her new cell phone number. Oh testified the customer who stole money from the spa on the evening of June 19, 2010, also stole her cell phone. On cross-examination by co-defendant Kim's counsel, Oh explained she obtained a different cell phone number sometime after that date. But she refused to state its last four digits in open court, even after the court ordered her to do so, claiming she was scared. Because Oh became emotional, the court called for a recess.

Out of the jury's presence, Kim's counsel made an offer of proof that calls continued to be made from Oh's stolen phone to persons Oh knew. When asked about the relevance of her new phone number, counsel stated only that it "further undermines her credibility." The court acknowledged that whether Oh continued to make calls from a phone she claimed was stolen and deactivated was relevant to impeach her. But the court sustained the People's objection to the question about Oh's new phone number because it did not see the relevance of that number and there was "none that the defense articulated at this point."

The People argue any claim of error with respect to Oh's new phone number is forfeited because Kim's counsel did not explain the relevance of this evidence, and defendant's trial counsel did not join in the request to pursue this line of questioning and did not object to the court's ruling. (See *People v. Wilson* (2008) 44 Cal.4th 758, 793 [failure to join in codefendant's objection or motion forfeits issue on appeal]; *People v. Ramos* (1997) 15 Cal.4th 1133, 1179 [issue regarding excluded evidence not preserved for review absent offer of proof].)

The record indicates defendant's trial counsel attempted to join in the discussion at one point, but was interrupted by the court. Assuming this was sufficient to preserve the issue as to defendant, we agree with the People that neither the defense's question nor the offer of proof established the relevance of Oh's new phone number. (See *People v. Lightsey* (2008) 54 Cal.4th 668, 727 [substance of expected answer must be clear either from wording or context of question or from offer of proof].) On appeal, defendant speculates that Oh may have refused to give out her new phone number because she did not have a new phone. That was not a relevance ground urged at trial. Nor can we speculate that ordering Oh to give out the last four digits of her new phone number would have elicited an admission that she did not have a new phone or a response supporting such an inference.

Defendant was allowed to impeach Oh's claim that her old phone was stolen with evidence suggesting she continued to make calls from that phone. Thus, the court did not completely preclude the defense from cross-examining Oh about that claim or exposing the jury to facts supporting an inference that the claim was false. Moreover, as we have discussed, the defense generally was given wide latitude to establish Oh's lack of credibility and bias. (Cf. *Davis v. Alaska* (1974) 415 U.S. 308, 318 [constitutional error to prevent defendant from developing a record of witness's bias].) The question about her new phone number, was at best only marginally relevant, and it sought to elicit cumulative evidence on a collateral matter. The exclusion of such evidence does not infringe on defendant's right of confrontation. (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 350 [noting that "[e]xclusion of impeaching evidence on collateral matters which has only slight probative value on the issue of veracity does not infringe on the defendant's right of confrontation"].)

We find no error.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

SUZUKAWA, J.

8